No. 25-10725

# In the United States Court of Appeals
# For the Fifth Circuit

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

*Plaintiff—Appellee,*

v.

NORTH TARRANT INFRASTRUCTURE, L.L.C.; FERROVIAL CONSTRUCTION US CORPORATION; WEBBER, L.L.C.,

*Defendants—Appellants.*

On Appeal from the
United States District Court for the Northern District of Texas
4:23-cv-01043-O

## BRIEF FOR APPELLANTS

Travis M. Brown
tbrown@cokinoslaw.com
Timothy P. Delabar
tdelabar@cokinoslaw.com
COKINOS | YOUNG
13355 Noel Rd., Suite 1375
Dallas, TX 75240
Tel.: (817) 635-3600
Fax: (817) 635-3636

Dana Livingston
dlivingston@cokinoslaw.com
COKINOS | YOUNG
900 S. Capital of Texas Hwy.
Suite 425
Austin, TX 78746
Tel.: (512) 482-9304
Fax: (512) 610-1184

*Attorneys for Defendants—Appellants*

No. 25-10725

---

LIBERTY MUTUAL FIRE INSURANCE COMPANY

*Plaintiff—Appellee,*

v.

NORTH TARRANT INFRASTRUCTURE, L.L.C.; FERROVIAL
CONSTRUCTION US CORPORATION; WEBBER, L.L.C.

*Defendants—Appellants.*

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that the

judges of this court may evaluate possible disqualification or recusal.

| **Defendants—Appellants** | **North Tarrant Infrastructure, L.L.C. ; Ferrovial Construction US Corporation; and Webber, L.L.C.** |
|---|---|
| Trial and Appellate Counsel: | Travis M. Brown tbrown@cokinoslaw.com Timothy P. Delabar tdelabar@cokinoslaw.com COKINOS \| YOUNG 13355 Noel Rd., Suite 1375 Dallas, TX 75240 Tel.: (817) 635-3600 Fax: (817) 635-3636 |

| Appellate Counsel: | Dana Livingston<br>dlivingston@cokinoslaw.com<br>COKINOS \| YOUNG<br>900 S. Capital of Texas Hwy.<br>Suite 425<br>Austin, TX 78746<br>Tel.: (512) 482-9304<br>Fax: (512) 610-1184 |
|---|---|
| **Plaintiff—Appellee** | **Liberty Mutual Fire Insurance Company** |
| Trial and Appellate Counsel: | Mark Tillman<br>CLYDE & CO US LLP<br>5605 N. MacArthur Blvd, Suite 560<br>Irving, Texas 75038<br>Tel.: (214) 492-5722<br>Fax: (214) 492-5721 |

*/s/ Travis M. Brown*
Travis M. Brown
*Counsel of Record for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Due to both the burden-shifting framework for analyzing coverage issues and the imprecise language in the Designated Work Exclusion that lies at the heart of this case, Appellants believe oral argument would aid the Court. The central issue is whether claims asserted in 30 Underlying Lawsuits are excluded from coverage under an exclusion that cannot be read in any grammatically correct manner and for which the parties have diametrically opposed interpretations. Although Appellants have attempted to provide clarity regarding the interplay of the Designated Work Exclusion and the remainder of the Policy in their written brief, they nonetheless believe the Court's decision would be significantly aided by the opportunity to address any questions the Court may have to the parties directly at oral argument. Accordingly, Appellants request the Court set this case for oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .........................................II

STATEMENT REGARDING ORAL ARGUMENT....................................IV

TABLE OF CONTENTS ................................................................ V

TABLE OF AUTHORITIES .........................................................VIII

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...................... 2

STATEMENT OF THE CASE ...........................................................3

    A.    Facts relevant to issues presented for review .......................3

        1.    The underlying lawsuits .............................................3

        2.    This coverage action ............................................ 6

    B.    Relevant procedural history ......................................... 11

    C.    Rulings presented for review............................................ 11

SUMMARY OF ARGUMENT.......................................................... 13

STANDARD OF REVIEW ............................................................ 16

ARGUMENT ............................................................................ 16

I.    The framework for the district court's eight-corners analysis was flawed. ..16

II.    The district court erred by not crediting Appellants' interpretation of the Policy as reasonable. ...................................................................21

A.    The Policy's insuring agreement, as modified by the Extended PCOH Coverage Endorsement, covers bodily injury arising out of Appellants' work for ten years after completion of Segment 3A. ............................................................................ 22

B.    "Arising out of" requires only an "incidental relationship" to Appellants' completed work. ...........................................26

C.    The DWE applies only to bodily injury within the "products-completed operations hazard"—bodily injury arising out of Appellants' *completed* work conducted for a project other than Segment 3A. ...................................................29

    1.    The Initial DWE Form that the DWE modifies is patently ambiguous...............................................................29

    2.    The DWE at issue adds ambiguity on top of ambiguity, which the district court erroneously interpreted in Liberty Mutual's favor. ...................................................... 31

        a.    The DWE's omission of the Initial DWE Form's operative language creates an ambiguity that the district court inadvertently interpreted in Liberty Mutual's favor. .............................................33

        b.    Because the DWE applies only to completed work, it is reasonable to interpret "Segment 3A" as the (noun) completed Segment 3A......................................35

        c.    Bodily injury "arising out of work conducted for any project other than the project will rebuild, construct, and expand" makes no sense grammatically. .............................................37

D.    The district court's failure to distinguish between the Policy's grant-of-coverage and the effect of the DWE muddled the analysis. .............................................................38

II.    Under the proper analytical framework and interpretation of the Policy, Liberty Mutual owes a duty to defend. ...................................... 40

A.  There are allegations of bodily injury arising out of Appellants' completed work. .................................................................. 41

   1.  The underlying plaintiffs allege bodily injury that occurred on Segment 3A during the Policy's extended PCOH period. .................................................................. 42

   2.  The underlying plaintiffs specifically allege that Appellants built Segment 3A. ..................................... 43

B.  None (much less all) of the underlying allegations are subsumed within the DWE. ............................................................... 44

   1.  In the Underlying Lawsuits, because Segment 3A is the only project at issue, there are no allegations of bodily injury arising out of completed work "other than" Segment 3A. ..................................................... 45

   2.  Ongoing operations are not "included in the PCOH." ............ 47

III.  Even if the Policy's insuring agreement and the DWE required allegations of bodily injury proximately caused by construction defects, Liberty Mutual still owes a duty to defend. ............................................. 48

Conclusion ............................................................... 50

Certificate of Service ................................................ 53

Certificate of Compliance ........................................ 54

# Table of Authorities

**Cases**                                                                       **Page(s)**

*Allied World Specialty Ins. Co. v. McCathern, P.L.L.C.*,
    802 Fed. App'x 128 (5th Cir. 2020) ............................................................ 49

*Amerisure Ins. Co. v. Navigators Ins. Co.*,
    611 F.3d 299 (5th Cir. 2010) ..................................................................... 27

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 424 (1986) ................................................................................ 16

*City of College Station, Tex. v. Star Ins. Co.*,
    735 F.3d 332 (5th Cir. 2013) ..................................................................... 20

*Crownover v. Mid-Continent Cas. Co.*,
    772 F.3d 197 (5th Cir. 2014) ..................................................................... 47

*In re Deepwater Horizon*,
    470 S.W.3d 452 (Tex. 2015) ...................................................................... 27

*Ewing Constr. Co. v. Amerisure Ins. Co.*,
    420 S.W.3d 30 (Tex. 2014) ................................................................. 39, 41

*Fed. Ins. Co. v. CompUSA, Inc.*,
    319 F.3d 746 (5th Cir. 2003) ..................................................................... 42

*Ford Motor Co. v. Tex. Dep't of Transp.*,
    264 F.3d 493 (5th Cir. 2001) ..................................................................... 16

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*,
    537 F.3d 404 (5th Cir. 2008) ..................................................................... 16

*Jarvis Christian Coll. V. Nat'l Union Fire Ins. Co.*,
    197 F.3d 742 (5th Cir. 1999) ..................................................................... 26

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
    242 S.W.3d 1 (Tex. 2007) ............................................................... 25, 39, 47

*Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*,
   903 F.3d 435 (5th Cir. 2018) .................................................................16, 41

*Mid-Continent Cas. Co. v. Swift Energy Co.*,
   206 F.3d 487 (5th Cir. 2000) ........................................................................28

*Nat'l Cas. Co. v. W. World Ins. Co.*,
   669 F.3d 608 (5th Cir. 2012) ..........................................................19, 39, 44

*Noble Energy, Inc. v. Bituminous Cas. Co.*,
   529 F.3d 642 (5th Cir. 2008) ........................................................................42

*Paloma Res., L.L.C. v. Axis Ins. Co.*,
   No. 22-20228, 2025 WL 1864957 (5th Cir. July 7, 2025) ............................38

*Pinto Tech. Ventures, L.P. v. Sheldon*,
   526 S.W.3d 428 (Tex. 2017) ........................................................................28

*Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*,
   473 S.W.3d 296 (Tex. 2015) ........................................................................28

*RSUI Indem. Co. v. The Lynd Co.*,
   466 S.W.3d 113 (Tex. 2015) ................................................................. 21, 38

*Shamoun & Norman, LLP v. Ironshore Indem., Inc.*,
   56 F. Supp. 3d 840 (N.D. Tex. 2014) .........................................................28

*Sport Supply Grp., Inc. v. Columbia Cas. Co.*,
   335 F.3d 453 (5th Cir. 2003) ........................................................................27

*Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*,
   592 F.3d 687 (5th Cir. 2010) ....................................................................... 16

*United States ex rel. Whipple v. Rockwell Space Operations Co.*,
   No. H-96-3626, 2002 WL 35658339 (S.D. Tex. Mar. 11, 2022) ..................46

*Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*,
   141 S.W.3d 198 (Tex. 2004) ........................................................................27

**Rules and Statutes**

Fᴇᴅ. R. Cɪᴠ. P. 56 ............................................................... 16

Fᴇᴅ. R. Cɪᴠ. P. 59 ........................................................... 11, 12

**Other Authorities**

*Other Than*, Merriam-Webster's Collegiate Dictionary (10th ed. 1995) ................ 16

# Jurisdictional Statement

A.     The district court had subject-matter jurisdiction under 2 U.S.C. § 1332 (diversity-of-citizenship jurisdiction). Plaintiff-Appellant North Tarrant Infrastructure, L.L.C. is a citizen of Texas and Delaware; Plaintiff-Appellant Ferrovial Construction US Corporation is a citizen of Texas and Delaware; and Plaintiff-Appellant Webber, L.L.C. is a citizen of Texas and Delaware. ROA.9-10. Defendant-Appellee is a citizen of Wisconsin and Massachusetts. ROA.8.

B.     This Court has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.

C.     The district court entered a final judgment on March 19, 2025. ROA.2373. Plaintiffs-Appellants filed a post-judgment motion to alter or amend the judgment on April 16, 2025. ROA.2374. After the district court denied the post-judgment motion to alter or amend on May 22, 2025 (ROA.2668-70), Plaintiffs-Appellants filed their notice of appeal on June 9, 2025 (ROA.2671).

D.     This appeal is from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. When the district court granted Liberty Mutual's Motion for Summary Judgment in part and held that Liberty Mutual had no duty to defend Appellants in the Underlying Lawsuits, it held that Appellants' interpretation of the designated work exclusion, which focused on the geographical limitations contained in that exclusion and repeated elsewhere in the policy, was not reasonable and the pleadings in the Underlying Lawsuits did not contain even a single allegation that would not be excluded under Liberty Mutual's interpretation of the designated work exclusion—even though it acknowledged that facts proven at trial consistent with the allegations in those pleadings may nonetheless fall outside the exclusion. The first question presented is whether the district court erred in reaching these conclusions.

2. When the district court denied Appellants' Motion to Alter or Amend Judgment, it held that the amended pleadings filed in the Underlying Lawsuits also did not contain even a single allegation that would not be excluded under Liberty Mutual's interpretation of the designated work exclusion. The second question presented is whether the district court erred in reaching this conclusion.

2

## Statement of the Case

This appeal from a summary judgment is from an insurance-coverage action.

### A.     Facts relevant to issues presented for review

#### 1.     The underlying lawsuits

Interstate I-35W cuts through Fort Worth, Texas. During Winter Storm Uri in February 2021, it was the scene of a massive 130 vehicle pile-up. ROA.1245. That pile-up, and the resulting bodily injuries, spawned the two-and-a-half dozen lawsuits that lie at the heart of this insurance-coverage dispute.[1] ROA.337-1224.

Defendants-Appellants—North Tarrant Infrastructure, LLC; Ferrovial Construction US Corporation; and Webber, LLC (collectively, "Appellants")—were named as defendants in the Underlying Lawsuits because of their role in rebuilding, expanding, and adding to the roadway. ROA.14, 115. From 2013 to 2018, they rebuilt the portion of the highway where the accidents occurred (referred to as "Segment 3A"), expanded the frontage roads, and added more toll lanes to Segment 3A. ROA.115. Upon completion of their work, Appellants turned the project over to the developer who "assumed responsibility for operations and maintenance" of Appellants' completed work. ROA.115.

---

[1] These are collectively, the "Underlying Lawsuits."

The Defendant-Appellee here is Liberty Mutual Insurance Company. Its description of Appellants' role with Segment 3A—in both the insurance policy it wrote and its pleadings in this coverage litigation—is consistent with allegations found in the pleadings in the Underlying Lawsuits. *See, e.g.*, ROA.115. The plaintiffs in the Underlying Lawsuits sued a raft of entities but divided them into three groups, which they call some version of the Roadway Defendants, the FedEx Defendants, and the De-Icing Manufacturer Defendants, or similar. *E.g.*, ROA.2007-08. Throughout their petitions, the plaintiffs use these group identifiers rather than plead specific allegations against specific defendants. *E.g.*, ROA.2042-46 (alleging causes of action against all Roadway Defendants).

Appellants are universally included in the "Roadway Defendants" category. ROA.2042-46. But, as defined in plaintiff's pleadings in the Underlying Lawsuits, the "Roadway Defendants" group also includes others. Lumped together with the rebuilding-and-expansion defendants, "Roadway Defendants" also includes several operation-and-maintenance defendants.[2] None of the operation-and-maintenance defendants are parties to this coverage action.

---

[2] The "Roadway Defendants" includes the following operation-and-maintenance entities: NTE Mobility Partners, LLC; NTE Mobility Partners Segments 3, LLC; Cintra US Services LLC; Cintra Holding US Corp d/b/a Cintra US Corp.; NTE Mobility Partners Segments 3 Holdings, LLC; NTE Mobility Partners Holding, LLC; Cintra NTE LLC; Cintra Texas Corp.; and Cintra NTE Mobility Partners Segments 3 LLC. ROA.1918-21.

The primary theme of the allegations against the Roadway Defendants in the Underlying Lawsuits relates to alleged failures concerning Segment 3A's maintenance and operation. Appellants are included among the "Roadway Defendants" category, but they were responsible—not for Segment 3A's maintenance or operation—but only for Segment 3A's rebuilding and expansion. *E.g.*, ROA.2010-14.

For example, the *Gerred Petition* alleges that the roadway was constructed by Appellants Ferrovial Construction and Webber. ROA.2014 ("Completed three months ahead of schedule, the roadway was constructed by Ferrovial Construction and Webber, also subsidiaries of Ferrovial").[3] It then alleges that the toll roads are managed by Cintra, a separate division of Ferrovial Construction's parent company. ROA.2012 ("Defendant Cintra U.S. is the primary subsidiary through which [Ferrovial SE] operates all of its toll road assets globally, including the NTE I-35W Toll Road in Fort Worth").[4]

---

[3] In this portion of the *Gerrard Petition*, "Ferrovial Construction" is used to refer to appellant Ferrovial Construction US Corp and "Ferrovial" to refer to Ferrovial SE, a separate entity. ROA.2010-14; *see supra* note 2 & accompanying text.

[4] *See also* ROA.2016 ("The 2022 Ferrovial annual integrated report brags that *Cintra-managed toll roads* are purportedly far safer than alternatives.") (emphasis added).

Taken together, the Underlying Lawsuits' pleadings allege that Appellants constructed the roadway and that Cintra—a non-party to this coverage suit—managed the roadway. Stated another way, although the Underlying Lawsuits primarily focus on alleged failures by other entities in Segment 3A's maintenance and operation, the only reason Appellants are named the Underlying Lawsuits is because they *built Segment 3A*. The only potential liability Appellants could face in the Underlying Lawsuits relates to their construction of Segment 3A.

### 2.    This coverage action

In connection with Appellants' role in building this section of I-35W, Appellants purchased a CGL insurance policy issued by Liberty Mutual to cover their work on the North Tarrant Express, including Segment 3A. ("Policy"). *See* ROA.2160 (Policy No. TB2-691-460860-013). The Policy is endorsed to provide coverage for bodily injury[5] arising out of Appellants' completed construction work for ten years after Appellants' completion of the "Designated Project" (the "Extended PCOH Coverage Endorsement"). ROA.235. The "Designated Project" listed in the schedule of the Extended PCOH Coverage Endorsement is:

> Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 Interchange.

---

[5] The Policy, like all CGL policies, also includes coverage for property damage, but because the Underlying Lawsuits relate to bodily injury, this brief discusses the Policy as it relates to bodily injury only, for efficiency purposes.

ROA.235. The Extended PCOH Coverage Endorsement extends coverage to bodily injury "within the 'products-completed operations hazard,'" i.e. bodily injury "arising out of" Appellants' completed work. ROA.206.

The Extended PCOH Coverage Endorsement does not, by its own terms, restrict coverage to only that bodily injury which arises out of Appellants completed work on the Designated Project. Liberty Mutual accomplishes that restriction by another endorsement—the Designated Work Exclusion ("DWE")—which excludes bodily injury "included in the 'products-completed operations hazard'" and arising out of: (1) *Appellants'*; (2) *completed* work; (3) conducted for *any project other than* "Segment 3A." The last sentence of the DWE's definition says:

> The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35W/I-820 interchange.

ROA.275.

The Designated Project and Segment 3A descriptions intentionally mirror each other: the Extended PCOH Coverage Endorsement provides coverage for bodily injury arising out of Appellants' completed work—including Appellants' completed work conducted for Segment 3A—for ten years following Segment 3A's completion. The DWE then excludes coverage for bodily injury arising out of Appellants' completed work conducted for a project other than Segment 3A.

After being served with the Underlying Lawsuits, Appellants tendered the suits to Liberty Mutual. ROA.111. Liberty Mutual initially agreed to honor its contractual obligations and defend Appellants. ROA.14.

Several years into the litigation, however, Liberty Mutual switched course and filed a declaratory-judgment action seeking a declaration that it owes no duty to defend or indemnify Appellants. *See* ROA.8-20. Liberty Mutual has never disputed that the Underlying Lawsuits fall within the Policy's insuring agreement for bodily arising out of Appellants' completed work. Instead, they at first asserted that the allegations in the Underlying Lawsuits relate exclusively to Appellants' work conducted for a project other than "Segment 3A," as that term is defined by an endorsement to the Policy.[6] ROA.19.

Specifically, Liberty Mutual alleged that because of the way it defined Segment 3A in the exclusionary endorsement, "the only work on Segment 3A that is covered is the *rebuilding*, *construction* and *expansion* of specific sections of the highway." ROA.16. Liberty Mutual asserted that because "the only negligent conduct alleged against [Appellants] relates to ongoing maintenance, *not* construction," the exclusion precluded coverage. ROA.16.

---

[6] Liberty Mutual later amended its pleading to assert that the "Professional Services Exclusion" in the Policy, which was not a basis for the district court's conclusion.

But as Liberty Mutual acknowledges in both its original and its first amended declaratory-judgment complaint, Appellants built Segment 3A and that they do not operate or maintain it.[7] In other words, as to Appellants, the negligent-maintenance-and-operation allegations are untrue. Yet the underlying plaintiffs' vague and inaccurate pleadings created confusion about why Appellants were added as defendants in the Underlying Lawsuits. For example, as Liberty Mutual points out in its amended complaint, the petition in the *Vardy* lawsuit originally referred to Appellants as members of the "Road *Maintenance* Defendants." ROA.119 (emphasis added). Likewise, the *Davis* petition alleged that the Roadway Defendants, including Appellants, "were responsible for operating and maintaining the TEXPress Lanes." ROA.122.

The plaintiffs in *Davis* and *Vardy*, however, later clarified their pleadings. The *Davis* plaintiffs filed an amended petition non-suiting Appellants, acknowledging that, as to Appellants, the negligent-maintenance-and-operation allegations lacked merit. ROA.2616-17. The *Vardy* plaintiffs left Appellants in the lawsuit but clarified their allegations as to Appellants, specifically alleging that:

---

[7] ROA.14 (" [Appellants'] role in the Project was to rebuild approximately 6.5 miles of the existing main lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes . . . . Following completion of the Project, *the Developer assumed responsibility for operations and maintenance* . . . .") (emphasis added); ROA.115 (same).

(1)     The "Roadway Defendants" have different duties;[8]

(2)     only some have a contract to manage the roads;[9]

(3)     the Roadway Defendants construct and operate roads, including Segment 3A;[10]

(4)     another Ferrovial entity, Cintra, operates;[11]

(5)     Ferrovial Construction and Webber (two of the three Appellants) construct;[12]

(6)     the Roadway Defendants undertook the standard of care of an experienced constructor, among others;[13] but

(7)     "did not do the work correctly."[14]

---

[8] ROA.2410 ("The Roadway Defendants *may have different duties*, and where that may be the case, Plaintiffs refer to the Roadway Defendants as the 'applicable Roadway Defendants,' so as not to plead certain claims against incorrect defendants.") (emphasis added).

[9] ROA.2416 ("*[S]ome of the Roadway Defendants* have a contract with TexDOT [sic] ***to manage*** those roads.") (emphasis added).

[10] ROA.2415 ("Ferrovial . . . owns both firms that bid for *and build* the transportation projects and firms that *operate* the transportation projects *once construction is complete.*") (emphasis added); ROA.2415 ("Ferrovial *constructs* and *operates* toll roads across the U.S.") (emphasis added).

[11] ROA.2415 ("*Cintra U.S.* is the primary subsidiary through which Ferrovial *operates* all of its toll roads . . . .") (emphasis added).

[12] ROA.2421 ("Completed three months ahead of schedule, the *roadway was constructed by Ferrovial Construction and Webber* . . . .") (emphasis added).

[13] ROA.2417 ("Good Industry Practices are further defined in …. the contract at page 37—setting out a standard of care of an 'experienced designer, engineer, *constructor*, operator or maintenance provider . . . .'") (emphasis added).

[14] ROA.2417 ("[T]he Roadway Defendants, who had obligations, conducted affirmative actions *yet did not do the work correctly* despite there being contracts in place among the Roadway Defendants to properly perform.") (emphasis added).

Thus, while plaintiffs like *Davis* chose to non-suit the inaccurate negligent-maintenance-and-operation allegations against Appellants, plaintiffs like *Vardy* chose to refine their pleadings to make it clear that Appellants' role with Segment 3A is that they built it. These allegations had been in the Underlying Lawsuits all along. *E.g.*, ROA.628; ROA.1144.

## B.    Relevant procedural history

Shortly after Liberty Mutual sued its insured in this coverage action, the parties cross-moved for summary judgment. ROA.139-65 (Liberty Mutual); ROA.1237-65 (Appellants). While the parties' motions were pending, many plaintiffs in the Underlying Lawsuits, including *Vardy* and *Davis*, amended their petitions. ROA.2392-647 (collecting the amended pleadings). Appellants tendered these amended pleadings to Liberty Mutual, ROA.2395-646, but Liberty Mutual maintained its denial. Appellants' motion pursuant to Federal Rule of Civil Procedure 59(e) was based in part on the new evidence contained in the amended pleadings, which was not available at the summary judgment stage and which Appellants contend clarifies Liberty Mutual's duty to defend. ROA.2392-646.

## C.    Rulings presented for review

The district court granted Liberty Mutual's summary-judgment motion as to the duty to defend and granted Appellants' cross-motion as to the duty to indemnify. ROA.2371-72. The district court rejected Appellants' interpretation that the Policy

covers bodily injury that occurs within ten years of Segment 3A's completion and arises out of Appellants' completed work on Segment 3A.[15]

According to the district court, all the allegations in the Underlying Lawsuits were excluded by the endorsement that excludes coverage for bodily injury arising out of Appellants' completed work conducted for a project *other than* Segment 3A. ROA.2371-72. Yet the district court held that because it was reasonable to infer from the underlying pleadings that Appellants built Segment 3A, the pleadings left open the possibility that the facts proven at trial may not be excluded. ROA.2371. The district court made a few comments about the Professional Services Exclusion but did not decide either motion on that basis.

Appellants moved for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). In that motion, Appellants explained that the district court's "eight corners" analysis was flawed and that its interpretation of the Policy was erroneous. ROA.2386-88. And, even under that erroneous interpretation, allegations in the amended pleadings fell outside the DWE. ROA.2374-91. Eight days later in a three-page order, the district court denied the reconsideration motion. ROA.2668-70.

---

[15] ROA.2381 ("NTI's interpretation is that the Policy provides ten years of completed-operations coverage for bodily injury related to NTI's work on Segment 3A, not that it covers all work "regardless of . . . when it occurs."); ROA.1248 ("Thus, the Designated Work Exclusion excludes coverage for bodily injury arising out of NTI's designated (and completed) "work," while preserving coverage for bodily injury arising out of NTI's other, non-designated work.").

## SUMMARY OF ARGUMENT

On the most basic level, the district court failed to appreciate two things. First, the DWE applies only to allegations of bodily injury arising out of Appellants' *completed* work conducted for a project other than Segment 3A. Second, Appellants built Segment 3A. They do not operate or maintain it, as is clarified in several of the Underlying Lawsuits and as Liberty Mutual has admitted from the outset.

The Extended PCOH Coverage Endorsement provides ten-years of products-completed operations coverage for bodily injury "arising out of" Appellants' completed work. Under Texas law, "arising out of" requires only an incidental causal relationship between the alleged bodily injury and Appellants' completed work. The DWE then excludes coverage for bodily injury arising out of Appellants' completed work conducted for a project other than Segment 3A. Read together, the Extended PCOH Coverage Endorsement and DWE clarify that the Policy covers bodily injury that occurs within ten years of Segment 3A's completion and has an incidental relationship to Appellants' completed work on Segment 3A. That, quite simply, is Appellants' reasonable interpretation of the Policy.

The district court engaged in the wrong analysis to reach an insupportable conclusion. Within the extended completed-operations coverage period, the accidents forming the basis of the Underlying Lawsuits occurred on Segment 3A.

13

The underlying plaintiffs sued Appellants for bodily injury. All underlying plaintiffs alleged that the bodily injury occurred within the extended completed-operations coverage period and occurred on Segment 3A. Those allegations alone are sufficient to establish the necessary incidental relationship between the bodily injuries and Appellants' completed construction work on Segment 3A. Even so, several of the underlying plaintiffs alleged (correctly) that Appellants constructed Segment 3A, reinforcing the inevitable conclusion that the initial grant of coverage for bodily injury arising out of Appellants' completed construction work was satisfied.

To confuse matters, however, many but not all of the underlying plaintiffs also alleged that Appellants had ongoing contractual obligations to operate and maintain Segment 3A. This is wrong, as Liberty Mutual acknowledges and as clarified by several of the Underlying Lawsuits. The confusion stemmed from an apparent "catch-all" notice-pleading strategy in which the underlying plaintiffs broadly defined "Roadway Defendants" and indiscriminately alleged the collective breach of contractual and common law duties and obligations, irrespective of whether any individual underlying defendant had those duties or obligations.

But not all the Underlying Lawsuits were this indiscriminate. Many of the underlying petitions clarified that Appellants' role with Segment 3A was construction and that other entities—not Appellants—were responsible for its

operation and maintenance. And, to add further clarity, the *Vardy* amended petition expressly disclaims negligent-maintenance-and-operations allegations against parties such as Appellants that did not have those duties. ROA.2378-80.

No matter what, even if these ongoing-operations-and-maintenance allegations were made against Appellants, they simply do not fit within the DWE. They are not, under any interpretation, allegations of bodily injury arising out of Appellants' *completed* work, much less Appellants' completed work conducted for a project other than Segment 3A. By definition, ongoing-maintenance-and-operations allegations are not within the "products-completed operations hazard." And by definition, allegations about ongoing operations conducted for Segment 3A do not allege bodily injury arising out of Appellants' completed work conducted for a project other than Segment 3A.

The district court should have concluded that Liberty Mutual owes a duty to defend because of the allegations of bodily injury occurring during the extended PCOH coverage period and arising out of Appellants' completed work. The district court should have disregarded the ongoing-maintenance-and-operations allegations about Segment 3A. As shown by the more careful underlying pleadings and as admitted by Liberty Mutual from the outset of this litigation, they were inaccurate. And they did not fall within the scope of the DWE.

## Standard of Review

This Court reviews a district court's award of summary judgment de novo, applying the same standard as the district court. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir.2001). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And when, as here, the parties cross-moved for summary judgment, this Court reviews "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690–91 (5th Cir. 2010) (quoting *Ford Motor Co.*, 264 F.3d at 498).

## Argument

### I.   The framework for the district court's eight-corners analysis was flawed.

The duty to defend is determined by an eight-corners analysis. *E.g.*, *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 446 (5th Cir. 2018). Under it, the district court should have held that the underlying allegations give rise to the

potential for Appellants' liability for bodily injury arising out of their completed construction work on Segment 3A. And because there are no allegations of bodily injury arising out of Appellants' completed work conducted for some other project, the DWE does not apply.

But the district court reached the opposite conclusion. That's because its eight-corners analysis was conducted under the wrong analytical framework. In constructing the framework, the district court veered off course in at least five ways.

*First*, by misconstruing Appellants' reasonable interpretation of the Policy, the district court found that the DWE—with all of its errors of syntax, contradictory verb-tenses, and confusing use of double-negatives—was unambiguous. Appellants' interpretation of the DWE is made clear in their summary-judgment motion.[16] Appellants did not argue that the Policy covered "all work on [Segment 3A] regardless of the nature of the work or when it occurs." ROA.2367. But because the district court took that to be Appellants' interpretation, the court felt obliged (incorrectly) to accept Liberty Mutual's overly restrictive interpretation of the DWE

---

[16] ROA.1247 ("the [DWE] excludes coverage for bodily injury arising out of NTI's designated (and completed) 'work'…"); ROA.1248. ("the [DWE] originally excluded 'bodily injury' arising out of NTI's completed work on any project 'other than' [the designated project]."); ROA.1249 (the DWE "preserv[es] coverage for bodily injury arising out of NTI's 'work' on Segment 3A.").

that it requires unmistakable allegations of bodily injury caused by some defect in the specific tasks of "constructing, rebuilding, or expanding" Segment 3A.

*Second*, the district court applied a more stringent causal requirement than the plain-language of the Policy contemplates—applying a proximate cause test that would require the Underlying Lawsuits to "discuss [Appellants'] *negligence* in the context of faulty construction," ROA.2368 (emphasis added), rather than applying the "but for" causal test that Texas courts uniformly apply to "arising out of" language in an insurance policy. This test requires only allegations of bodily injury with some "incidental relationship" to Appellants' completed work.

*Third*, the district court failed to appreciate that the DWE applies only to *completed* work. The court used a loose shorthand by discussing what "work" the Policy did or did not cover, rather than conducting a disciplined analysis of what bodily injury the Policy covered and what bodily injury the DWE then excluded. In combination with the improper ambiguity analysis and the application of the wrong causal test, this caused the district court to erroneously look for what "work"— what specific task—"allegedly *caused* the accidents," ROA.2367, rather than ask which completed work the accidents allegedly arose out of.

*Fourth*, the district court failed to conduct the analysis in the proper order. The court should have first determined what allegations fall within the Policy's

insuring agreement, as modified by the Extended PCOH Coverage Endorsement. Said another way, the district court should have first looked for allegations of bodily injury with an incidental relationship to Appellants' completed work. Then, the district court should have applied the DWE to determine whether *all* those covered allegations were "subsumed within" the exclusion. *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 613 (5th Cir. 2012). Thus, the district court should have asked if the allegations of bodily injury with an incidental relationship to Appellants' completed work relate exclusively to Appellants' completed work conducted for a project *other than* Segment 3A. The Underlying Lawsuits contain *zero* such allegations.

*And, fifth***,** as an amalgamation of all the above, the district court imposed a "construction defect" requirement with no basis in the Policy. This transformed the Policy's broad coverage for bodily injury with any incidental relationship to Appellants' completed-work—with a narrow exclusion for bodily injury arising out of Appellants' completed work conducted for a project other than Segment 3A—into much narrower coverage for bodily injury proximately caused by construction defects on Segment 3A.

With this defective analytical framework in hand, the district court then doubled down on its error by refusing to interpret the underlying allegations liberally

and draw all reasonable inferences in favor of coverage. *See City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013). Even under the district court's improper "construction defect" requirement, because the underlying plaintiffs allege that Appellants built Segment 3A and do not operate or maintain it, it is beyond reasonable to infer that allegations related to "defects," failure to "do the work correctly," and areas of the roadway "known to accumulate precipitation," relate to Appellants' Segment 3A construction work. The only alternative, which is not reasonable, is to infer that the underlying plaintiffs sued Appellants for no reason.

But the hallmark trigger of an insurer's duty to defend is the potential for indemnity based on the underlying pleadings. The district court seemed to appreciate that. In denying the portion of Liberty Mutual's motion seeking a ruling on the duty to indemnify, the district court: (1) accepted the reasonable inference from the underlying pleadings that Appellants built Segment 3A; and (2) acknowledged the potential for indemnity under the policy arising from Appellants' role as the entities that built Segment 3A. ROA.2371. But because the district court was working under a defectively constructed analytical framework that required explicit allegations of bodily injury caused by "construction defects," the court nonetheless denied the duty to defend:

> For example, because the third-party plaintiffs include NTI as a defendant, it is possible that they could still advance facts pertaining to construction defects, even if such facts are not found in the pleadings.

ROA.2371. That gets things exactly backwards.

Because Appellants constructed Segment 3A, and because the underlying pleadings clarify (and Liberty Mutual admits) that other entities operate and maintain Segment 3A, the underlying allegations give rise to the potential for Appellants' liability for bodily injury arising out of their completed work on Segment 3A. That's enough to trigger the duty to defend. And because there are no allegations of bodily injury arising out of Appellants' completed work conducted for some other project, the DWE does not apply.

## II.    The district court erred by not crediting Appellants' interpretation of the Policy as reasonable.

In interpreting an insurance contract under Texas law, the insured merely needs to demonstrate that its own interpretation of the policy is reasonable. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). If both the insured's and the insurer's interpretations are reasonable, the Court "must resolve the uncertainty by adopting the construction most favorable to the insured." *Id.* This is true even if the construction urged by the insurer "appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* Instead, the district court misconstrued Appellants' interpretation as one under which the Policy would cover

"all work on [Segment 3A], regardless of the nature of the work or when it occurs." ROA.2367. Finding that interpretation to be unreasonable, the district court ruled that the DWE was unambiguous. But as set forth below, the DWE is anything but unambiguous and Appellants' interpretation is at the very least reasonable.

### A. The Policy's insuring agreement, as modified by the Extended PCOH Coverage Endorsement, covers bodily injury arising out of Appellants' work for ten years after completion of Segment 3A.

The Extended PCOH Coverage Endorsement extends broad coverage for bodily injury arising out of Appellants' completed work. In order to interpret the DWE—what the Policy excludes—the Court must first interpret the coverage grant—what the Policy covers. Again, Liberty Mutual has never denied that the Underlying Lawsuits fall within the Policy's insuring agreement. On this front, its declaratory judgment claim begins with an assertion, not about the insuring agreement's scope, but about the policy's exclusions: "Liberty Mutual would show that the claims against Defendants in the Underlying Lawsuits are specifically excluded by the [DWE]." ROA.16. By conflating the Policy's insuring agreement with its exclusions, Liberty Mutual jumbled the analysis. The proper order for the analysis matters. We set it out here.

The Liberty Mutual policy initially covers "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

damage' to which this insurance applies." ROA.192. Under "Paragraph 1.b. of Section I - Coverages - Coverage A Bodily Injury and Property Damage Liability," the insurance applies to "bodily injury" only if: (1) the "bodily injury" is caused by an "occurrence," defined as an accident in the "coverage territory;" and (2) the "bodily injury" occurs during the policy period. ROA.192. The initial policy period was May 1, 2013 – May 1, 2014. ROA.185.[17] Under the Extended PCOH Coverage Endorsement, the Policy was amended to include ten years of extended completed-operations coverage by replacing "Paragraph 1.b. of Section I - Coverages - Coverage A Bodily Injury and Property Damage Liability" as follows:

---

[17] The Policy was later endorsed to extend its expiration date to May 1, 2018, ROA.276, and then May 1, 2019. ROA.328.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PRODUCTS - COMPLETED OPERATIONS - EXTENDED POLICY PERIOD**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| |
|---|
| Projects:  Interstate 35W Fort Worth from Downtown at interstate 30 interchange going north to the Interstate 820 Interchange |

Paragraph 1.b. of Section I – Coverages – Coverage A Bodily Injury and Property Damage Liability is replaced with the following:

b.  This insurance applies to "bodily injury" and "property damage" only if:

   (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)  (a)  The "bodily injury" or "property damage" occurs during the policy period; or

       (b)  With respect to "bodily injury" or "property damage" within the "products-completed operations hazard", the "bodily injury" or "property damage" occurs within __**10**__ years from the earliest of: (i) policy expiration, (ii) the completion of "your work" on the Designated Project(s) listed in the Schedule, or (iii) the date "your work" is put to its intended use by any person or organization other than another contractor or subcontractor working on the same project; and

ROA.235.

The Policy thus covers "bodily injury" within the "products-completed operations hazard" ("PCOH") for ten years after the earliest of policy expiration or Appellants' completion of the Designated Project, which is defined in the Schedule by the same geographical boundaries that comprise Segment 3A.[18]

---

[18] There is no dispute that the accident at issue occurred within this time period.

In turn, the Policy defines "products-completed operations hazard" as including all "bodily injury" occurring away from premises the insured owns or rents and "*arising out of* . . . 'your work,'" except for work that has not yet been completed or abandoned. ROA.206. Texas courts have uniformly interpreted the CGL policy's arcane description of "work" in the "products-completed operations hazard" definition as meaning simply "completed work." *See, e.g., Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 11 (Tex. 2007) ("[The 'your work' exclusion] applies to the 'products-completed operations hazard,' and generally excludes coverage for 'property damage' to the insured's *completed work*.") (emphasis added).

To aid the Court, below is the language of the insuring agreement, with Section 1.b. presented as modified by the Extended PCOH Coverage Endorsement, and incorporating the definitions of "products-completed operations hazard" (in **bold**) and Segment 3A/Designated Project (in <u>underscore</u>) in place of those defined terms. The Policy reads, in relevant part:

> SECTION I - COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.    Insuring Agreement
>
>     a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have

the right and duty to defend the insured against any "suit" seeking those damages . . . .

b.    This insurance applies to "bodily injury" . . . only if:
. . . .

2.    a.    The "bodily injury" . . . occurs during the policy period; or

b.    With respect to "bodily injury" . . . **occurring away from premises you own or rent and arising out of … "your work," except work that has not yet been completed or abandoned**, the "bodily injury" . . . occurs within <u>10</u> years from the earliest of: (i) policy expiration, [or] (ii) the completion of "your work" on <u>Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 interchange</u> . . . .

ROA.192; ROA.235; ROA.275.

⁂

Stated simply, as to bodily injury arising out of Appellants' completed work, the insurance applies if the accident causing the bodily injury occurs within ten years of either the completion of Segment 3A or policy expiration, whichever is earlier.

**B.    "Arising out of" requires only an "incidental relationship" to Appellants' completed work.**

This Court has consistently held that the words "arising out of," when used within an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage." *See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 197 F.3d 742, 747 n.5 (5th Cir. 1999). This "broad definition favoring coverage,"

requires only an "incidental relationship." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 312 (5th Cir. 2010) (citing *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458-59 (5th Cir. 2003)). An "incidental relationship" requires "simply a 'causal connection or relation,' which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). In this case, based on the language of the Policy, the "incidental relationship" that is required is between the "bodily injury" and Appellants' completed work.

The phrase "arising out of" is not tied to liability for the manner in which work is performed. *See id.* (in the context of a professional services exclusion, distinguishing "due to" language from "arising out of" based on the latter's lack of a causal requirement tying "the insured's liability to the manner in which the [work was] performed"). Instead, as the Texas Supreme Court held when addressing an additional insured endorsement that extended coverage for liability "with respect to" the named insured's operations or facilities, the only requirement was that the claims "involved" the work in question. *See In re Deepwater Horizon*, 470 S.W.3d 452, 461-62 (Tex. 2015).

Indeed, the scope of but-for causation communicated by the phrase "arising out of" is, in principle, limitless. That's the upshot of *Pinto Technology Ventures, L.P.*

*v. Sheldon*, 526 S.W.3d 428 (Tex. 2017). Writing about but-for causation in the insurance context, the decision reminds that the Texas Supreme Court has "repeatedly observed" that arising out of "'has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain.'" *Id.* at 437-38 (quoting *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 308 (Tex. 2015)).

This Court and others have found injury or damage to "arise out of work" when that work provides the context in which the injury occurs. Take this Court's decision in *Mid-Continent Casualty Co. v. Swift Energy Co.* 206 F.3d 487 (5th Cir. 2000). Applying Texas law for injury "arising out of [the named insured's] operations," this Court held that "it is sufficient the named insured's employee was injured while present at the scene in connection with performing the named insured's business." *Id.* at 498; *see, e.g., Shamoun & Norman, LLP v. Ironshore Indem., Inc.*, 56 F. Supp. 3d 840, 848 (N.D. Tex. 2014) (holding that breach of fiduciary duty claims by a client against his former legal counsel over the firm's fee agreement "arose out of" the firm's rendering of legal services because, but for the attorney-client relationship, there would be no claim for breach of fiduciary duty).

Thus, all that is required to satisfy the Policy's insuring agreement is bodily injury with some incidental relationship to Appellants' completed work. There is no

requirement of allegations of Appellants' "negligence in the context of faulty construction" or "earlier negligence [that] implicate[s] construction of the roadway," as the district court held. ROA.2368-69. Segment 3A is Appellants' completed work. So allegations that merely implicate Segment 3A are enough.

### C.   The DWE applies only to bodily injury within the "products-completed operations hazard"—bodily injury arising out of Appellants' *completed* work conducted for a project other than Segment 3A.

As the district court acknowledged, the DWE excludes coverage for "bodily injury . . . arising out of" work conducted for any project other than Segment 3A. ROA.2365. But the ellipsis—contained in the district court's memorandum opinion—omits two critical details. The DWE applies only to bodily arising out of *Appellants'* work that has been *completed*.

#### 1.   The Initial DWE Form that the DWE modifies is patently ambiguous.

The Policy, via Exclusion-Designated Work Form CG 21 34 01 87 ("Initial DWE Form") provides that the "insurance does not apply to 'bodily injury . . . *included in the 'products-completed operations hazard*' and arising out of '*your* work' shown in the Schedule." ROA.243 (emphasis added). The original Schedule describes "your work" as North Tarrant Express Segment 1&2:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

### SCHEDULE

Description of your work:

This policy does not cover work conducted for any project other than the North Terrant Express Segment 1&2 Project that encompasses 13 miles along I-820 and SH 121/SH 183 from I-35W to SH 121

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

ROA.243.

Literally plugging in the language from the Schedule to the exclusionary endorsement's operative words, the Initial DWE Form says the insurance "does not apply to 'bodily injury' . . . included in the [PCOH] and arising out of this policy does not cover work conducted for any project other than [NTE Segments 1&2]." ROA.243. To be sure, this language is anything but unambiguous. But it is not impossible to interpret reasonably.

This ambiguous provision *could* be interpreted as a sort of self-defeating double-negative—"the policy does not not cover," so to speak. To be clear, Appellants have never advocated for such an extreme reading of the provision. Still, the only way to avoid that seemingly absurd result is to interpret the repetitive words

"this policy does not cover" as simply reinforcing the intent of the initial exclusionary language. That's the only way to avoid superfluity and absurdity by giving all words meaning and effect without causing confusing repetition and grammatical incoherence.

Under this interpretation of the Initial DWE Form, the "insurance does not apply to 'bodily injury' . . . included in the PCOH and arising out of Appellants' work conducted for a project other than NTE Segments 1&2." The Policy covers bodily injury arising out of Appellants' completed work—including work conducted for NTE Segments 1&2—and the Initial DWE Form excludes bodily injury arising out of Appellants' completed work for a project other than NTE Segments 1&2.

> **2.  The DWE at issue adds ambiguity on top of ambiguity, which the district court erroneously interpreted in Liberty Mutual's favor.**

The endorsement that the parties have referred to as the DWE introduces two new ambiguities. Those ambiguities appear to have been a primary source of the district court's confusion. Below, in its entirety, is the provision that the district court held unambiguously excludes coverage for everything but bodily injury proximately caused by construction defects on Segment 3A:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Named Insured    North Tarrant Infrastructure LLC Segment 3A    Endorsement number   004

The following changes are effective as of the effective dates shown below and will terminate with the policy. All other provisions of the policy remain unchanged.

Effective Date:  05/01/2013

Exclusion-Designated Work, Form CG 21 34 01 87, is amended to read as follows:

This policy does not cover work conducted for any project other than the following North Tarrant Express.

Segment 3A defined as:
The project will rebuild 6.5 miles of the existing main lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes (or managed toll lanes) in both directions, doubling the capacity of the highway. The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35W/I-820 interchange.

ROA.275.

However, this language is anything but unambiguous, and it says nothing about "construction defects." First, the DWE completely omits the exclusion's operative words, which say that this insurance does not apply to bodily injury "included in the [PCOH] and arising out of 'your work' shown in the Schedule." ROA.243. This creates an ambiguity that the district court inadvertently interpreted in Liberty Mutual's favor. Second, the DWE must be interpreted as incorporating that language or it is, at the very least, reasonable to do so. And when that language is incorporated and given effect, it is apparent that the DWE applies only to allegations of bodily injury arising out of Appellants' completed work. With that in

mind, it is eminently reasonable to interpret the DWE Schedule's definition of the "project" as the completed (i.e. rebuilt, constructed, and expanded) Segment 3A. Third, Liberty Mutual's interpretation, that DWE should read "this insurance does not apply to bodily injury included in the 'products completed operations hazard' and arising out of The project will rebuild. . . construct. . . and expand" makes no sense grammatically.

> **a.    The DWE's omission of the Initial DWE Form's operative language creates an ambiguity that the district court inadvertently interpreted in Liberty Mutual's favor.**

The first ambiguity is that the DWE does not include the Initial DWE Form's operative language that incorporates the PCOH definition and clarifies that the language of the Schedule defines "your work" (Appellants' work). *See* ROA.243 ("this insurance does not apply to bodily injury … included in the [PCOH] and arising out of '[Appellants'] work' described in the Schedule"). The DWE clearly states that it amends, rather than replaces, the Initial DWE Form. *Compare* ROA.235 (Extended PCOH Coverage Endorsement: "Paragraph 1.b. . . . is *replaced with . . . .* "); *with* ROA.275 (DWE: "[Initial DWE Form], is *amended* to read as follows"). In other words, the language in the DWE that begins "this policy does not cover work" modifies the description of "your work," in the Initial DWE Form's

Schedule, which begins with the same words. *See* ROA.243 (Initial DWE Form: "[T]his policy does not cover work . . . .").

Appellants briefed the district court on this issue. ROA.1247 (discussing how the DWE Schedule's definition modifies the Initial DWE Form's description of "your work"). Indeed, the district court at first recognized that the DWE must be interpreted as incorporating the Initial DWE Form's operative language. ROA.2365 ("the Policy excludes coverage for 'bodily injury … arising out of' 'work conducted for any project other than the following North Texas Express. [sic] Segment 3A defined as:'" (ellipsis and "[sic]" in original)); ROA.2365 n.3 ("The exclusion incorporates by reference a separate description of "*work*," hence the break in quotations here.") (emphasis added).

But when it came time to interpret the DWE and apply it to the pleadings, the district court fell into two technical imprecisions that led the district court to the exact opposite result of the one it should have reached. The words following "arising out of" are "'*your* work' shown in the Schedule," and the ellipsis in the district court's opinion replaces the words "included in the 'products-completed operations hazard.'" ROA.243. Failing to give effect to those words, the district court ultimately accepted Liberty Mutual's interpretation that "*only work* related to the

construction, rebuilding, or expansion of the roadway *is covered*." ROA.2366 (emphasis added).

Even setting aside the district court's improperly restrictive interpretation of the DWE's "your work" definition (addressed below), this incomplete reading of the policy drastically expanded the scope of the exclusion. Under a proper reading of the DWE's plain language, the district court should have held that "*only bodily injury* included in the PCOH and arising out of Appellants' work conducted for a project other than 'Segment 3A,' as defined in the Schedule, *is excluded*."

> **b.    Because the DWE applies only to completed work, it is reasonable to interpret "Segment 3A" as the (noun) completed Segment 3A.**

The second ambiguity is where the briefing below largely drew the battle-lines. The DWE includes more detail than the Initial DWE Form as to what Appellants' work would entail. It says:

> The project will rebuild 6.5 miles of the existing main lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes (or managed toll lanes) in both directions, doubling the capacity of the highway. The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35W/I-820 interchange.

ROA.275.

Appellants argued that it was eminently reasonable to interpret the DWE "as excluding only work for projects (noun) 'other than' NTE Segment 3A (noun)."

ROA.2344. Under that interpretation, bodily injury arising out of Appellants' completed work—the completed Segment 3A defined by the geographical boundaries in both the Extended PCOH Coverage Endorsement and the DWE— would fall outside of the exclusion, i.e. be "preserved." ROA.2344. Liberty Mutual, in contrast, tried to convince the district court that the noun "project" was actually a series of verbs, arguing that "the only work on Segment 3A that is covered is the *rebuilding*, *construction* and *expansion* of specific sections of the highway." ROA.118 (emphasis in original). The district court agreed with Liberty Mutual that the project was defined as a "set of specific tasks *within* a geographic location." ROA.2366. The court held that it is "temporally not possible for 'operation' and 'maintenance' to be 'for' the purpose of rebuilding, constructing, and expanding the highway." ROA.2370. But had the district court recognized that the DWE applies only to bodily injury arising out of Appellants' completed work, it would have been impossible for the district court to reach either conclusion.

Namely, what else could the *completed* rebuilding, constructing, and expanding of Segment 3A be other than the completed Segment 3A? It is at the very least reasonable to interpret the DWE as applying only to bodily injury arising out of work conducted for one of Appellants' completed projects (noun) "other than" the rebuilt, constructed, and expanded Segment 3A. Additionally, it is neither

temporally possible, nor logically coherent, to find that bodily injury arising out of allegedly negligent maintenance and operations that are ongoing on Segment 3A is bodily injury arising out of Appellants' completed work, much less Appellants' completed work conducted for a project other than Segment 3A.

> **c.    Bodily injury "arising out of work conducted for any project other than the project will rebuild, construct, and expand" makes no sense grammatically.**

Like with the Initial DWE Form, literally plugging the Schedule's definition into the exclusion's operative language results in a provision that says:

> This insurance does not apply to "bodily injury" . . . included in the [PCOH] and arising out of [t]his policy does not cover work conducted for any project other than the following North Tarrant Express. Segment 3A defined as: [t]he project will rebuild . . . construct . . . and expand . . . the highway. The 3A Segment extends from I-30 in downtown Fort Worth up to and through the I-35W/I-820 Interchange.

ROA.243; *see* ROA.275.

In essence, the dispute in the district court was over whether the Schedule defined Segment 3A as "the project will rebuild, construct, and expand," on the one hand, or, on the other, the result of that rebuilding, constructing and expanding— the completed Segment 3A, extending "from I-30 in downtown Fort Worth up to and through the I-35W/I-820 Interchange." The district court interpreted the language in Liberty Mutual's favor. But reading the exclusion as applying to bodily injury arising out of work conducted for any project other than the project will

rebuild, construct, and expand makes no sense grammatically, in everyday English or otherwise. *See Paloma Res., L.L.C. v. Axis Ins. Co.*, No. 22-20228, 2025 WL 1864957, at *4 (5th Cir. July 7, 2025) (rejecting insurer's interpretation of exclusion because "it makes no sense grammatically, in everyday English or otherwise, to read the exclusion as applying to 'any actual or alleged . . . the misappropriation of trade secrets.'").

For the DWE to be interpreted in Appellants' favor, they need only posit *a* reasonable reading, not the most reasonable reading or even the better reading. *RSUI Indem. Co.*, 466 S.W.3d at 118. But even though it need not be, Appellants' interpretation is more reasonable. Both grammatically and based on the DWE's limited application to completed work, it makes far more sense to interpret the exclusion as applying to bodily injury included in the PCOH and arising out of Appellants' work conducted for any project other than the rebuilt, constructed, and expanded Segment 3A, which "extends from I-30 in downtown Fort Worth up to and through the I-35W/I-820 Interchange." The district court erred by reading it otherwise.

### D.    The district court's failure to distinguish between the Policy's grant-of-coverage and the effect of the DWE muddled the analysis.

As the Supreme Court of Texas has commented, the CGL policy's insuring agreement "grants the insured broad coverage for property damage and bodily injury

liability." *Lamar Homes*, 242 S.W.3d at 10. That broad coverage is then narrowed by the exclusions. *Id.*

Thus, when conducting an "eight corners" analysis as to the duty to defend, there is a well-established burden-shifting scheme. Under it, the insured has the initial burden to establish coverage under the policy's initial grant of coverage. *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). If it does so, "the insurer must prove one of the policy's exclusions applies." *Id.* While the duty to defend is triggered by a single alleged injury that falls within the scope of the initial grant of coverage, "exclusions negate the insurer's duty to defend only when all of the alleged injuries that fall into the coverage provision are subsumed under the exclusionary provision." *Nat'l Cas. Co.*, 669 F.3d at 613.

Here, Liberty Mutual never disputed that the Underlying Lawsuits alleged bodily injury falling within the initial grant-of-coverage. Its declaratory judgment claim begins with "Liberty Mutual would show that the claims against Defendants in the Underlying Lawsuits are specifically excluded by the [DWE]." ROA.16. Liberty Mutual thus conceded from the start that Appellants' burden of proof is satisfied, so the burden shifts to Liberty Mutual to prove the application of the DWE. Skipping the analysis of what allegations were covered under the Policy's initial insuring agreement impaired the district court's analysis of the DWE's application.

After quoting the DWE, the district court made the following comment, which betrays the Court's flawed analysis:

> In other words, the Policy *only includes coverage* for bodily injury arising out of work conducted for the project. The exclusion defines what is excluded by reference to *what is included*.

ROA.2366 (emphasis added).

Implicit in the second sentence above is its converse—that the district court believed the DWE excluded everything but what was specifically included in the DWE's description of the project, as the district court incorrectly interpreted that description. Thus, with the stroke of a pen, the district court eradicated the Policy's broad grant of coverage.

By doing so, the court relieved Liberty Mutual of its burden of proof. Rather than ensuring that *all* allegations fell within the scope of the DWE, the district court went looking for allegations that fall within the "only coverage" the district court incorrectly believed the Policy includes. By asking the wrong question, the court reached the wrong conclusion. And, in doing so, it inverted the burden of proof.

## II.  Under the proper analytical framework and interpretation of the Policy, Liberty Mutual owes a duty to defend.

Applying the proper eight-corners analysis, Liberty Mutual owes a duty to defend. The Underlying Lawsuits allege bodily injury arising out of Appellants' completed work and occurring within ten years of the earlier of completion of

Segment 3A or Policy expiration. Indeed, by arguing only about the exclusion, Liberty Mutual has never disputed that the allegations fall within the Policy's ambit. *See* ROA.16, ROA.101 ("Liberty Mutual would show that the claims against Defendants in the Underlying Lawsuits are specifically excluded . . . ."). And because the alleged injuries are not subsumed under the exclusionary provisions, Liberty Mutual owes a duty to defend.

### A.   There are allegations of bodily injury arising out of Appellants' completed work.

Under Texas's well-established "eight-corners rule," the court must "look to the facts alleged within the four corners of the petition (or complaint) in the underlying lawsuit, 'measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could *potentially* be covered by the insurance policy.'" *Lyda Swinerton Builders,* 903 F.3d at 446 (quoting *Ewing Constr. Co*, 420 S.W.3d at 33 (emphasis in original)). Under the eight-corners rule, allegations "must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend." *Lyda Swinerton Builders*, 903 F.3d at 446.

The Policy provides coverage for bodily injury arising out of Appellants' completed work. The Extended PCOH Coverage Endorsement describes that work as "Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going

north to the Interstate 820 Interchange." ROA.235. Liberty Mutual's duty to defend, then, is triggered if the facts alleged in the Underlying Lawsuits, construed liberally in Appellants' favor, state facts *potentially* giving rise to liability for bodily injury arising out of that section of the roadway. *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008).

That standard is easily met here. In fact, the Underlying Lawsuits are replete with allegations that Appellants are liable for bodily injury arising out of the Project, triggering Liberty Mutual's duty to defend.

### 1. The underlying plaintiffs allege bodily injury that occurred on Segment 3A during the Policy's extended PCOH period.

Each underlying plaintiff alleges claims for bodily injury occurring on February 11, 2021. *See, e.g.*, ROA.1473, 1826, 2070. Because that is within the extended completed-operations coverage period, these allegations are sufficient to satisfy the grant-of-coverage requirement of bodily injury occurring during the extended policy period. *See Fed. Ins. Co. v. CompUSA, Inc.*, 319 F.3d 746, 754 (5th Cir. 2003) ("An 'occurrence' policy covers all claims based on an event occurring during the policy period . . . .").

So too, the underlying plaintiffs similarly allege bodily injury that occurred on the Project—"Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 Interchange." ROA.235; *see, e.g.*,

ROA.2070 (decedent "was driving on the TEXpress lanes of I-35W in Fort Worth, Texas"); ROA.2014 (describing "Segment 3" of the project as the location where the fatal crash occurred); ROA.2522 (same). Alone, those allegations establish the necessary "incidental connection" between the bodily injuries and Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 Interchange. Thus, there are allegations of bodily injury occurring during the extended PCOH coverage period and arising out of Appellants' completed work, for which Appellants are alleged to be legally liable. Unless Liberty Mutual can prove that all of those covered allegations are subsumed within the DWE, it owes a duty to defend.

### 2. The underlying plaintiffs specifically allege that Appellants built Segment 3A.

On top of implicating Appellants' "completed work" as defined in the Policy—meaning "Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 Interchange"—several of the underlying plaintiffs also clarified what Appellants actually did that resulted in the completed Segment 3A. These allegations are consistent with the description of Appellants' role in the project, both in the Policy and Liberty Mutual's pleadings in this coverage action—it is undisputed that Appellants are in the lawsuit because they built Segment 3A. ROA.115.

These allegations lead to the reasonable inference that Appellants' liability in the Underlying Lawsuits, if any, is for bodily injury arising out of its completed work in rebuilding Segment 3A. The Underlying Lawsuits allege that the "Roadway Defendants" construct and operate toll roads, including Segment 3A, ROA.2415, and that another Ferrovial entity and "Roadway Defendant," Cintra, operates Segment 3A. ROA.2415. From these allegations as to Appellants, this Court can make the reasonable inference that the district court missed: the Underlying Lawsuits allege bodily injury arising out of Appellants' completed construction work on Segment 3A.[19]

## B.     None (much less all) of the underlying allegations are subsumed within the DWE.

Liberty Mutual's burden is to demonstrate that *all* the alleged injuries that fall within the policy's insuring agreement are "subsumed within" the DWE. *See Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 616 (5th Cir. 2012). Yet, when the DWE is properly interpreted, none of them are. Thus, the district court should have focused its analysis on the covered allegations against Appellants of bodily injury that (1) occurred within the extended PCOH coverage period; and (2) occurred on the

---

[19] *See generally* ROA.1259-60 (discussing in summary-judgment motion the allegations and reasonable inferences of Appellants' liability for bodily injury arising out of its completed work in rebuilding, constructing, and expanding Segment 3A).

road Appellants built, "Interstate 35W Fort Worth from Downtown at Interstate 30 interchange going north to the Interstate 820 Interchange." If, and only if, every single one of those allegations in fact relates to bodily injury arising out of (1) *Appellants'*; (2) *completed* work; (3) for a project *other than* the rebuilt, constructed, and expanded *Segment 3A*, Liberty Mutual is relieved of its duty to defend.[20] Under a properly constructed analytical framework, finding that Liberty Mutual met that burden borders on the absurd.

> **1.    In the Underlying Lawsuits, because Segment 3A is the only project at issue, there are no allegations of bodily injury arising out of completed work "other than" Segment 3A.**

Liberty Mutual agrees that Appellants' potential liability in the Underlying Lawsuits must relate to their construction of Segment 3A—the only work that Appellants performed. *See* ROA.115. As Liberty Mutual concedes, "[Appellants'] role in the Project was to rebuild approximately 6.5 miles of the existing lanes of I-35W, construct new, expanded frontage roads, and expand the highway with the addition of two TEXpress lanes (or managed toll lanes) in both directions." ROA.115. And "[f]ollowing completion of the Project, the Developer assumed

---

[20] Liberty Mutual has also asserted the Policy's "Exclusion—Contractors—Professional Liability," although it was not a basis for the district court's summary judgment. *See* ROA.2369 (noting that certain allegations in the Underling Lawsuits "[i]f anything, . . . could suggest a design defect" but concluding merely that the Court "cannot interpret those allegations as construction defects . . . .").

responsibility for operations and maintenance on this segment of the I-35W right of way [i.e., where the Underlying Lawsuits allege the bodily injury occurred]." ROA.115.

Whatever interpretation of the term "project" under the DWE the Court uses, it is not disputed that the DWE's plain language excludes completed work for any project *other than* Segment 3A. *See Other than*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1995) (defining "other than" as "with the exception of; except for; besides"); *see also United States ex rel. Whipple v. Rockwell Space Operations Co.*, No. H-96-3626, 2002 WL 35658339, at *6 (S.D. Tex. Mar. 11, 2022) (finding "nothing ambiguous" about a settlement agreement's reservation of "all claims and causes of action *other than* those described in the Complaint and First Amended Complaint") (emphasis added).

Nor is it disputed that the only "project" implicated by the Underlying Lawsuits is Segment 3A—the location of the bodily injury alleged by the underlying plaintiffs. Thus, the allegations of bodily injury arising out of Appellants' completed work relate *solely* to Appellants' work on the Segment 3A project. The DWE therefore does not apply to these allegations relating to Appellants' completed work.

### 2.    Ongoing operations are not "included in the PCOH."

It is likewise not disputed that the DWE applies only to bodily injury "included in the 'products-completed operations hazard ....'" *See* ROA.243, 275. To the extent that briefing is necessary on this point, allegations of operations that were ongoing at the time bodily injury occurred are not allegations of bodily injury included in the products-completed operations hazard. Indeed, the plain-language of the policy's PCOH definition specifically excludes work "that has not yet been completed or abandoned." ROA.206. As the Texas Supreme Court commented in its seminal opinion on the "your work" exclusion, which exclusively applies to property damage included in the PCOH, the standard CGL insurance policy "distinguishes property damage that occurs while the contractor's work is ongoing from property damage that occurs after the work is complete." *Lamar Homes*, 242 S.W.3d at 13; *see also Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 213 (5th Cir. 2014) (certain CGL policy exclusions apply "only to property damage that occurred while work was ongoing, not damage to completed work").

Thus, the DWE is inapplicable to the underlying plaintiffs' allegations relating to ongoing operations, such as maintenance and operation of the roadway, because they do not allege bodily injury "included in" the PCOH. And Liberty Mutual admits that it knows these allegations do not apply to Appellants in the first place.

*See* ROA.14 ("*the Developer assumed responsibility for operations and maintenance...*") (emphasis added); ROA.115 (same).

Therefore, far from subsuming *all* of the covered allegations against Appellants in the Underlying Lawsuits, the DWE in fact subsumes *none* of the allegations of any type in the Underlying Lawsuit. Allegations of bodily injury arising out of Appellants' completed work are not excluded, as they do not arise out of "work conducted for any project other than [Segment 3A]"—which is the only bodily injury the DWE excludes. And allegations of bodily injury arising out of ongoing operations are not excluded because the DWE only excludes coverage for bodily injury included in the PCOH.

## III. Even if the Policy's insuring agreement and the DWE required allegations of bodily injury proximately caused by construction defects, Liberty Mutual still owes a duty to defend.

Liberty Mutual's distorted interpretation of the Policy is a legal dead end. Assume the DWE's language were to somehow completely negate the Policy's broad coverage—such that the Policy covers only allegations that unmistakably tie Appellants' liability to bodily injury caused by a specific "construction defect." Even then, Liberty Mutual still loses. That's because, under Texas law requiring liberal construction of pleadings in an "eight corners" analysis, there are sufficient allegations to trigger Liberty Mutual's duty to defend.

Consider once more the *Gerred* Petition, discussed above, which clarifies that Appellants built Segment 3A (and do not operate or maintain it). ROA.2014; *see supra* p. 5. The Underlying Lawsuits then assert various acts or omissions that can be reasonably inferred to allege some defect in Appellants' construction work on Segment 3A:

- the Roadway Defendants undertook the standard of care of an experienced constructor, among others, but "did not do the work correctly." ROA.2417.[21]

- Allegations that the area where the underlying accidents occurred was known to accumulate precipitation—as to Appellants, it is reasonable to infer that this is an allegation that this portion of Segment 3A was defectively constructed with improper or inadequate drainage. ROA.2022, 2087, 2431, 2489, 2531.

- Allegations that Segment 3 initially failed to incorporate "state-of-the-art" safety technology, such as weather sensors only installed after the February 11, 2021 crash—as to Appellants, this is an allegation that Segment 3A was defectively constructed without adequate technology, including weather sensors. ROA.2023, 2088, 2490, 2531, 2621.

- Other allegations that identify numerous acts and/or omissions for which the underlying plaintiffs seek to hold Appellants liable, including:

  o failing to recognize and remediate safety hazards;

  o violating industry standards and best practices;

---

[21] *See, e.g., Allied World Specialty Ins. Co. v. McCathern, P.L.L.C.*, 802 F. App'x 128, 132 (5th Cir. 2020) (rejecting insurer's argument that this Court should dismiss as "meaningless boilerplate" vague allegation of "other incidental and consequential damages," and finding that allegation was sufficient to trigger duty to defend).

- o failing to adequately warn or make safe dangers, conditions and activities;

- o failing to use ordinary care;

- o undertaking and assuming a duty to use Good Industry Practices;

- o creating a dangerous condition and failing to warn others; and

- o other negligent acts and omissions to be identified as discovery is conducted.

*See, e.g.*, ROA.2043-44, 2438-39, 2493-94, 2533-34. Again, taken together with the fact that Appellants built Segment 3A, these allegations must be inferred to allege some fault related to Appellants' construction work.[22]

Thus, the Underlying Lawsuits—even under the district court's erroneous "construction defect" standard—allege potentially covered defect claims triggering Liberty Mutual's duty to defend. There are accordingly allegations and reasonable inferences of covered bodily injury caused by alleged construction defects on Segment 3A, which fall squarely in the Policy's grant-of-coverage and outside the DWE's exclusionary language.

## Conclusion

Interpreting the allegations liberally in favor of coverage and drawing all reasonable inferences in favor of coverage, and interpreting the exclusion narrowly

---

[22] Appellants reiterate their rejection of the "construction defect" standard adopted by the district court.

in favor of the insured, there are clear covered allegations of bodily injury arising out of Appellants' completed work on Segment 3A. And there are no allegations of bodily injury arising out of Appellants' *completed* work (as opposed to other entities' ongoing operations) conducted for a project other than Segment 3A. So the duty to defend was triggered. In concluding otherwise, the district court erred.

This simple analysis, however, was derailed by two things: (1) the confusing language of the endorsement that Liberty Mutual wrote; and (2) the vague and often inaccurate allegations of the underlying plaintiffs. Under well-established rules of insurance policy interpretation and the well-defined analytical framework of the "eight corners" rule in Texas, both things should have been resolved in favor of coverage. Unfortunately, the district court went the other way on both, resulting in two-fold error that this Court should correct.

Respectfully submitted

*/s/ Travis M. Brown*
Travis M. Brown
tbrown@cokinoslaw.com
Timothy P. Delabar
tdelabar@cokinoslaw.com
COKINOS | YOUNG
13355 Noel Rd., Suite 1375
Dallas, TX 75240
Tel.: (817) 635-3600
Fax: (817) 635-3636

Dana Livingston
dlivingston@cokinoslaw.com
Cokinos | Young
900 S. Capital of Texas Hwy.
Suite 425
Austin, TX 78746
Tel.: (512) 482-9304
Fax.: (512) 610-1184

*Counsel of Record for Defendants—Appellants North Tarrant Infrastructure, L.L.C.; Ferrovial Construction US Corporation; and Webber, L.L.C.*

## CERTIFICATE OF SERVICE

I certify that on September 10, 2025, the foregoing document was filed and served electronically through the Court's Electronic Case Filing System on lead counsel of record for Plaintiff-Appellee:

Mark Tillman
CLYDE & CO US LLP
5605 N. MacArthur Blvd, Suite 560
Irving, Texas 75038
Tel.: (214) 492-5722
Fax: (214) 492-5721

*/s/ Travis M. Brown*
Travis M. Brown

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5TH CIR. R. 32.1, this document contains 10,616 words.

2.     This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements OF FED R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 point Equity, except for footnotes, which are in at least in 12 point Equity, as permitted by 5TH CIR. R. 32.1.


*/s/ Travis M. Brown*
Travis M. Brown